# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| SWARTZMILLER ASSOCIATES, INC., a Michigan corporation,<br><br>    Plaintiff,<br><br>v.<br><br>DAS HOLZ HAUS, a Illinois company, and LAVERN SCHLABACH, an individual,<br><br>    Defendants. | Hon. _____<br><br>Case No. _____ |

## COMPLAINT AND JURY DEMAND

Plaintiff, Swartzmiller Associates, Inc., through its counsel, Dickinson Wright PLLC, for its Complaint against Defendants, Das Holz Haus and LaVern Schlabach, state the following:

### NATURE OF ACTION

1. This is a breach of contract case seeking the recovery of unpaid sales commissions. In 2012, Plaintiff, Swartzmiller Associates, Inc. ("SMA"), entered into an Agreement with Defendants, Das Holz Haus and its principal LaVern Schlabach (collectively, "DHH"), wherein SMA agreed to exclusively represent and sell DHH products (primarily, cabinets and related services). When the parties first entered into the Agreement, DHH had no dealer network at all. So, SMA was tasked with building DHH a dealer network and customer base in certain states. Under the

1

terms of the Agreement, DHH agreed to pay SMA a 10% commission on all customer accounts and DHH sales procured by SMA in the specified territory. The parties agreed that the obligation to pay a sales commission arose when DHH received payment on an invoiced order.

2. In May of 2021, DHH purported to terminate the parties' Agreement (with effectively no notice to SMA). At the time of the purported termination of the Agreement by DHH, SMA had built up a dealer network that included 11 states (Michigan, Indiana, Illinois, Wisconsin, Missouri, Iowa, Ohio, Kentucky, Nebraska, Kansas, and Tennessee).

3. After termination of the Agreement, DHH failed to pay commissions due and owing to SMA. DHH also failed to pay post-termination commissions on customer accounts, which became due after DHH terminated the parties' Agreement. SMA sent several correspondence to DHH that sought to resolve this dispute amicably and without court intervention. But DHH ignored SMA's communications, so SMA was forced to file this lawsuit.

4. As detailed below, SMA is entitled to double damages, court costs, and mandatory attorney fees for DHH's failure to pay outstanding pre- and post-termination sales commissions to SMA. *See* MCL § 600.2961.

## PARTIES

5. Plaintiff Swartzmiller Associates, Inc. is a privately held company incorporated in Michigan with its principal place of business at 604 Sunrise Park, Howell, Michigan 48843.

6. Defendant Das Holz Haus is a privately held company that, upon information and belief, is incorporated in Illinois with its principal place of business at 573 N. County Rd. 325 E., Tuscola, IL 61953.

7. Defendant LaVern Schlabach is the principal of Das Holz Haus and was primarily responsible for contracting with Plaintiff. Upon information and belief, Mr. Schlabach is domiciled in Illinois.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

9. Venue is proper in this Court pursuant 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the below claims occurred in this district, to wit, formation, breach, and performance of the parties' contract.

10. This Court has personal jurisdiction over Defendants pursuant to Michigan's long arm statute, M.C.L. § 600.715.

## FACTUAL ALLEGATIONS

11. In 2012, SMA and DHH entered into an Agreement wherein SMA would exclusively represent and sell DHH products (cabinets and related services).[1]

12. As the Agreement was exclusive, SMA was precluded from representing a competing cabinet line during the term of the Agreement.

13. Per the Agreement, DHH agreed to pay SMA a 10% commission on all DHH products ordered in the Territory. The parties agreed that DHH was obligated to pay the 10% commission on customer accounts and sales procured by SMA. The 10% sales commission became due and owing to SMA when DHH received payment on an order.

14. In 2012, when the parties first entered into the Agreement, DHH had no dealer network or customer base in Michigan, Indiana, Illinois, Wisconsin, or Missouri. SMA was to establish—and did, in fact, establish—a viable dealer network for DHH's products in these states.

15. After considerable effort and investment, SMA procured customers and established a dealer network in Michigan, Indiana, Illinois, Wisconsin, or Missouri.

---

[1] The Agreement was not memorialized in a single written instrument and evolved over time, which is why it is not attached as an exhibit. Discovery will better define the scope and terms of the parties' Agreement.

16. Because of SMA's success, DHH agreed to expand the Territory for which SMA had responsibility (and for which SMA was precluded from carrying a competing line).

17. Indeed, as its responsibility increased, SMA continued to add to the dealer network and increase sales for the benefit of DHH. By 2021, SMA had established a dealer network and expanded its Territory to include Iowa, Ohio, Kentucky, Nebraska, Kansas, and Tennessee.

18. After SMA had achieved such significant success through the leveraging of its dealer network, DHH decided to terminate its relationship with SMA and sell direct to the dealer network created by SMA.

19. At the time of the purported termination of the Agreement by DHH, SMA's Territory included 11 states.[2]

20. Recognizing that its abrupt termination was violative of the parties' Agreement and contrary to accepted industry practices—especially in light of the exclusivity requirement of the parties' Agreement—DHH permitted SMA to continue making sales for it through May 31, 2021 ("Term").

21. However, DHH did not comply with its obligations to pay SMA commissions due and owing during the Term.

---

[2] Michigan, Indiana, Illinois, Wisconsin, Iowa, Missouri, Ohio, Kentucky, Nebraska, Kansas, and Tennessee.

22. Indeed, SMA is aware of orders that were placed even prior to the purported termination of the Agreement for which it has not been paid commissions.

23. Moreover, DHH has failed to pay any post-termination sales commissions owed on customer accounts and sales procured by SMA.

24. DHH openly acknowledges that 2021 has been one of its best sales years. Yet, while the sales SMA has generated for DHH have grown steadily year over year, the commissions paid to SMA in 2021 were significantly lower than the previous year and not in keeping with the orders received by DHH in the Territory.

25. Given the market, the significant increase in revenue for DHH, and the fact that SMA is aware of at least one large order that was not disclosed to SMA (for which it has not been paid a commission), SMA has significant concerns that DHH has not been properly abiding by the parties' Agreement.

26. Undoubtedly, failing to disclose and pay all commissions owed to SMA for orders that occurred in the Territory is a clear breach of the parties' Agreement.

27. Moreover, DHH by way of letters dated May 11, 2021 and May 17, 2021, proposed to resolve the issue of its improper termination of the Agreement by offering to pay SMA commissions for sales that occurred in the Territory from June 1 through June 30 at 75% normal commission and from July 1 through July 31 at 50% normal commission.

28. DHH conditioned this arrangement upon SMA not offering a competing cabinet line prior to July 31, 2021.

29. While SMA did not agree that this proposal from DHH was adequate compensation for DHH breaching the Agreement, SMA refrained from taking on any competing cabinet line during the period requested by DHH. SMA refrained from offering a competing cabinet line during this period in an attempt to resolve the commission issues—and in reliance on the fact that DHH would at least pay the commissions it indicated it would in the May letters.

30. Yet, DHH refused to make the commission payments and as recently as October 26, 2021, indicated to SMA that DHH had not yet decided whether it would now even honor this promised arrangement.

31. Given the above, SMA has significant concerns regarding the accuracy of the payments it has received to date.

32. As for commissions for June and July that DHH indicated it would pay in the May 11 and May 17 letters, DHH still has not made any such payments.

33. Although SMA needs a full accounting of DHH's records to ascertain the true amount of commissions owed, based on the limited information available to SMA, the pre-termination commissions owed to it are estimated to exceed $60,000.[3]

---

[3] This amount is doubled under the relevant statute, and is added to the other damages outlined below, which exceed this Court's amount-in-controversy requirements.

7

34. Further, SMA is entitled to certain post-termination commissions on customer accounts for which it was the procuring cause.

35. Upon information and belief, DHH's refusal to pay pre- and post-termination sales commissions was, and continues to be, intentional.

## COUNT 1: MICHIGAN SALES REPRESENTATIVE ACT
*For Commissions Owing*

36. Plaintiff incorporates the forgoing factual allegations and restates them herein.

37. SMA and DHH entered into a binding legal Agreement wherein SMA agreed to be the exclusive sales representative for DHH in a specified Territory.

38. At first, the Territory consisted of Michigan, Indiana, Illinois, Wisconsin, and Missouri. By the termination date, the parties had agreed to expand SMA's sales Territory to also include Iowa, Ohio, Kentucky, Nebraska, Kansas, and Tennessee.

39. Under the parties' Agreement, DHH agreed to pay SMA a 10% commission on all DHH products ordered in the Territory.

40. In May of 2021, DHH abruptly terminated the parties' Agreement.

41. Thereafter, DHH failed to pay commissions due and owing. Indeed, SMA is aware of at least one large account that was not disclosed to it, and to which sales commissions are outstanding.

42. SMA's attempts to collect the owing sales commissions have been ignored by DHH. Recently, SMA sent two letters to DHH (October 29, 2021 and December 7, 2021), which were ignored.

43. Under the Michigan Sales Representative Act, "[t]he terms of the contract between the principal and sales representative shall determine when a commission becomes due." MCL § 600.2961(2). As stated above, DHH's obligation to pay commissions arose when it received payment on an invoice for any order that came from SMA's sales Territory.

44. In any event, "[i]f the time when the commission is due cannot be determined by a contract between the principal and sales representative, the past practices between the parties shall control or, if there are no past practices, the custom and usage prevalent in this state for the business that is the subject of the relationship between the parties." MCL § 600.2961(3).

45. "All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due." MCL § 600.2961(4). Here, DHH abruptly terminated the parties' Agreement in May of 2021 and, thereafter, failed to pay commissions due and owing within 45 days.

46. "A principal who fails to comply with this section is liable to the sales representative for both of the following: (a) [a]ctual damages caused by the failure to pay the commissions when due[ and], (b) [i]f the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less." MCL § 600.2961(5)(a)–(b). Known "actual damages" in this case are currently estimated to exceed $60,000.

47. Additionally, "[i]f a sales representative brings a cause of action pursuant to this section, the court *shall award* to the prevailing party reasonable attorney fees and court costs." MCL § 600.2961(6) (emphasis added).

48. Because DHH failed to pay sales commissions due and owing to SMA within the time limits set by the Michigan Sales Representative Act, DHH is now liable for two times the amount of commissions owing, and SMA *must* be awarded its attorney fees for having to file this lawsuit.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants for the sales commissions owing to Plaintiff (in an amount to be determined at trial, but not less than $60,000), plus statutorily mandated damages, court costs, and attorney fees.

## COUNT 2: MICHIGAN SALES REPRESENTATIVE ACT
*For Prospective Post-Termination Commissions*

49. Plaintiff incorporates the forgoing factual allegations, as well as ¶¶35–48, and restates them herein.

50. As detailed above, SMA and DHH entered into an Agreement wherein SMA was the exclusive sales representative for DHH in Michigan, Indiana, Illinois, Wisconsin, and Missouri, Iowa, Ohio, Kentucky, Nebraska, Kansas, and Tennessee.

51. The parties Agreement contemplated a "customer procurement" commission basis, which means DHH agreed to pay SMA a 10% commission on *all* DHH products ordered in SMA's Territory for which SMA was the procuring cause.

52. In Michigan, a customer-procurement agreement allows a sales representative to recover a commission for all sales to a customer that the agent procured—regardless of whether the agent was involved in a particular sale. *See Lilley v. BTM Corp.*, 958 F.2d 746, 751 (6th Cir.1992).

53. Significantly, the absence of a written agreement does not preclude post-termination, customer-based sales commissions. *See*, *e.g.*, *Reed v. Kurdziel*, 89 N.W.2d 479, 482–83 (Mich. 1958) (holding that an oral agreement between the parties, which did not have a time limitation, entitled plaintiff to receive commissions on original sales as well as reorders.); *Militzer v. Kal-Die Casting Corp.,* 200 N.W.2d 323, 325 (Mich. Ct. App. 1972) (holding that the plaintiff was entitled to a commission on all reorders occurring before or after his termination);

11

*Pfam, Inc. v. Indiana Tube Corp.*, No. 06-cv-11015, 2006 WL 3313772, at *7 (E.D. Mich. Nov. 15, 2006) ("when the parties' agreement is silent, or there is a disagreement whether post-termination commissions were included as a term of the original agreement, a sales representative may state a claim for post-termination commissions under the procuring cause doctrine based on customer procurement and a life of the part basis"); *Fernandez v. Powerquest Boats, Inc*., 798 F. Supp. 458, 461 (W.D. Mich. 1992) ("In other words, where the contract and other circumstances offer no guidance as to the parties' intentions, a duty to pay post-termination commissions may be implied-at-law to enforce notions of 'fair dealing' and prevent the principal from unfairly taking advantage of the agent's services").

54. Despite this well-settled law, in May of 2021, DHH abruptly terminated the parties' Agreement and refused to pay sales commissions on customer accounts that were procured by SMA.

55. Indeed, DHH is now selling directly to customers that were procured by SMA after considerable effort and investment on behalf of SMA (and to the benefit of DHH).

56. DHH is utilizing the dealer network established by SMA—and selling to customer that SMA procured therein—which includes Michigan, Indiana, Illinois, Wisconsin, Missouri, Iowa, Ohio, Kentucky, Nebraska, Kansas, and Tennessee.

57. DHH's attempt to cut SMA off from commissions relating to its procured customers is a breach of the parties Agreement and violative of Michigan's Sales Representative Act.

58. SMA is entitled to a prospective 10% commission on all customer accounts that it procured during the Term of the parties' Agreement.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and permanent injunctive relief against Defendants—requiring Defendants to pay a 10% sales commissions on a prospective basis for all customer accounts that were procured by SMA. The judgment and/or injunction should also mandate statutory double-damages and guaranteed recovery of court costs and attorney fees in the event that SMA has to return to court to enforce the judgment and/or injunction against Defendants.

## COUNT 3: EQUITABLE ACCOUNTING

59. Plaintiff incorporates the forgoing factual allegations as if fully set forth herein.

60. SMA and DHH entered into an Agreement wherein SMA agreed to be the exclusive sales representative for DHH.

61. Under the parties' Agreement, DHH agreed to pay SMA a 10% commission on all DHH products ordered in the Territory.

62. While DHH's obligation to pay the commission arose when an order was placed, the obligation to make the payment did not arise until receipt of payment on the invoice for any order.

63. In May of 2021, DHH abruptly terminated the parties' Agreement.

64. Thereafter, DHH failed to pay commissions due and owing.

65. The exact amount of sales commissions owing can only be determined by evaluating the sales records of DHH, which are exclusively within the control of DHH.

66. SMA is aware of at least one large account that was not disclosed to it, and to which sales commissions are outstanding.

67. SMA is entitled to an accounting of DHH's sales records so that it can determine the amount of sales commissions due and owing. Absent an accounting of DHH's sales records, SMA cannot ascertain the exact dollar amount owed under the parties Agreement.

68. Under Michigan common law, an equitable accounting of a defendants' internal financial records is permitted when such records are within the exclusive custody and control of the defendant.

69. Here, DHH's financial records are exclusively within its control and must be evaluated to ascertain the amount of sales commissions owed to SMA under the parties' Agreement.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order compelling Defendants to produce all financial records to Plaintiffs, this Court, and the jury, so that the appropriate amount of damages can be calculated at trial. Plaintiffs also request any other relief the Court deems fair and equitable.

## COUNT 4: BREACH OF CONTRACT

70. Plaintiff incorporates the forgoing factual allegations as if fully set forth herein.

71. SMA and DHH entered into a binding legal Agreement wherein SMA agreed to be the exclusive sales representative for DHH in a specified Territory.

72. In May of 2021, DHH abruptly terminated the parties' Agreement.

73. The parties' Agreement lacked express terms relating to termination notice. However, the parties formed the Agreement with the understanding that industry standards and fair business practices would control their contractual relationship.

74. Reasonable notice, according to industry practice, for these types of exclusive sales representative agreements usually requires between 30 to 90 days termination notice. Thus, DHH's abrupt and immediate termination of the parties' Agreement constitutes a breach.

75. Similarly, the parties' Agreement lacked express terms relating to severance. However, typical industry practice for exclusive sales agreements only permit termination upon payment of an appropriate severance.

76. Accordingly, appropriate severance pay was an implied term within the parties' Agreement.

77. Indeed, in consideration for such an implied term, SMA had to forfeit its right to contract with competing entities.

78. Between 2012 and 2021, SMA established a viable dealer network for DHH's products for which DHH has been the beneficiary in the form of continually increasing sales.

79. This dealer network started with SMA's initial sales territory of Michigan, Indiana, Illinois, Wisconsin, and Missouri, and expanded to include Iowa, Ohio, Kentucky, Nebraska, Kansas, and Tennessee.

80. Because of SMA's success, DHH continued to increase the Territory for which SMA had responsibility (and for which SMA was precluded from carrying a competing line).

81. As its responsibility increased, SMA continued to add to the dealer network and increase sales for the benefit of DHH. After SMA had achieved such significant success through the leveraging of its dealer network, DHH decided to

terminate its relationship with SMA and sell direct to the dealer network created by SMA.

82. In other words, after SMA had established the infrastructure for DHH, DHH decided to cut SMA out of the picture without any notice or severance pay.

83. Industry standard under these circumstances—and in light of the significant value SMA created for DHH—makes 18–36 weeks' severance pay appropriate.[4]

84. Based on the commissions earned by SMA in previous years, 18–36 weeks of severance pay would be approximately $145,000–$300,000.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant for breaching the parties' Agreement and award Plaintiff damages in an amount to be determined at trial, but not less than $145,000.

## COUNT 5: PROMISSORY ESTOPPEL

85. Plaintiff incorporates the forgoing factual allegations as if fully set forth herein. This Count is pled in the alternative to Count 2, as post-termination sales commissions (to which SMA is entitled) would cover the damages sought herein.

---

[4] Severance pay usually equals 2–4 weeks regular pay per year of employment. Here, Plaintiff worked under an exclusivity agreement for approximately 9 years, which means Plaintiff should receive a severance pay that reflects 18–36 weeks of historical income.

86. As stated above, SMA is entitled to unpaid commissions that became due during the Term of the parties' Agreement. SMA is also entitled to post-termination commissions—in perpetuity—on customer accounts procured during the Term of the parties' Agreement.

87. Recognizing its post-termination obligations, DHH sent letters to SMA dated May 11, 2021 and May 17, 2021 in which it promised to pay SMA post-termination commissions. DHH promised to pay SMA for sales that occurred in the Territory from June 1 through June 30 at 75% normal commission, and from July 1 through July 31 at 50% normal commission.

88. DHH conditioned this arrangement upon SMA not offering a competing cabinet line prior to July 31, 2021.

89. While SMA did not agree that this proposal from DHH was adequate compensation for the breach of the Agreement (as it was already entitled to these post-termination commissions), it refrained from taking on any competing cabinet line during the period requested by DHH in detrimental reliance on the fact that DHH would at least pay the commissions it indicated it would in the May letters.

90. Yet, DHH refused to make the promised commission payments.

91. And, in fact, as recently as October 26, DHH indicated to SMA that it had not yet decided whether it would ever honor this promise to pay.

92. In the event that this Court, or a jury, determines that SMA is not entitled to post-termination sales commissions pursuant to the terms of the parties' Agreement, then, under the common law theory of promissory estoppel, Plaintiff is entitled to at least a 7.5% commission for sales that occurred in the Territory in June, and a 5% commission for sales that occurred in Territory in July.

WHEREFORE, in the alternative to Count 2, Plaintiff respectfully requests that this Court enter a judgment against Defendants for the commissions promised and owing to Plaintiff as set forth in DHH's May letters, to which SMA detrimentally relied upon by upholding the exclusivity conditions set forth therein.

Dated: March 11, 2022

Respectfully submitted,

DICKINSON WRIGHT LLC

/s/ *Kory M. Steen*
John S. Artz (P48578)
Kory M. Steen (P83170)
500 Woodward Ave., Suite 4000
Detroit, Michigan
Tel: 248-433-7262
Fax: (844) 670-6009
JSartz@dickinsonwright.com
KSteen@dickinsonwright.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff, Swartzmiller Associates, Inc., through its counsel, Dickinson Wright PLLC, hereby demands a trial by jury of all issues so triable.

Dated: March 11, 2022

          Respectfully submitted,

          DICKINSON WRIGHT LLC

          /s/ *Kory M. Steen*
          John S. Artz (P48578)
          Kory M. Steen (P83170)
          500 Woodward Ave., Suite 4000
          Detroit, Michigan
          Tel: 248-433-7262
          Fax: (844) 670-6009
          JSartz@dickinsonwright.com
          KSteen@dickinsonwright.com

          *Attorneys for Plaintiff*