UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SWARTZMILLER ASSOCS., INC., | Case No. 2:22-cv-10529 |
| *Plaintiff*, | Paul D. Borman<br>United States District Judge |
| v. | |
| DAS HOLZ HAUS & LAVERN SCHLABACH, | David R. Grand<br>United States Magistrate Judge |
| *Defendants.* | |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS (ECF No. 8)**

### Introduction

This case arises out of the termination of a sales agreement between Plaintiff Swartzmiller Associates, Inc. and Defendants Das Holz Haus and LaVern Schlabach. Now before the Court is Defendants' Motion to Dismiss. (ECF No. 8.) The Court finds that the briefing adequately addresses the issues in contention and dispenses with a hearing pursuant to E.D. Mich. L. R. 7.1(f)(2). For the reasons that follow, the Court will **GRANT** the Motion **IN PART** and **DENY** it **IN PART**.

### I.     Statement of Facts

On March 11, 2022, Plaintiff Swartzmiller Associates, Inc. ("SMA") filed a Complaint against Defendants Das Holz Haus and its principal, LaVern Schlabach (collectively, "DHH"). (ECF No. 1.) The allegations contained in the Complaint are as follows.

1

"In 2012, SMA and DHH entered into an Agreement wherein SMA would exclusively represent and sell DHH products (cabinets and related services)" and DHH would "pay SMA a 10% commission on all . . . customer accounts and sales procured by SMA." (ECF No. 1, PageID 4.) This "Agreement was not memorialized in a single written instrument and evolved over time." (ECF No. 1, PageID 4.) The "parties formed the Agreement with the understanding that industry standards and fair business practices would control their contractual relationship." (ECF No. 1, PageID 15.)

SMA was successful, "procur[ing] customers and establish[ing] a dealer network in Michigan, Indiana, Illinois, Wisconsin, [and] Missouri," and expanding its sales territory "to include Iowa, Ohio, Kentucky, Nebraska, Kansas, and Tennessee." (ECF No. 1, PageID 4–5.) Nonetheless, in early May of 2021, "DHH [abruptly] decided to terminate its relationship with SMA and sell direct to the dealer network created by SMA." (ECF No. 1, PageID 5, 15.) Upon this termination, DHH "permitted SMA to continue making sales for it through May 31, 2021." (ECF No. 1, PageID 5.)

Further, "DHH by way of letters dated May 11, 2021 and May 17, 2021 . . . offer[ed] to pay SMA commissions for sales that occurred in [its] Territory from June 1 through June 30 at 75% normal commission and from July 1 through July 31 at 50% normal commission," "conditioned . . . upon SMA not offering a competing

2

cabinet line prior to July 31, 2021." (ECF No. 1, PageID 6–7.) "While SMA did not agree that this proposal from DHH was adequate compensation for DHH breaching the Agreement," it still "refrained from offering a competing cabinet line during this period in an attempt to resolve the commission issues—and in reliance on the fact that DHH would at least pay the commissions it indicated it would in the May letters." (ECF No. 1, PageID 7.)

But DHH has not paid SMA what it promised to. DHH has failed to pay commissions on some "orders that were placed even prior to the purported termination of the Agreement." (ECF No. 1, PageID 6.) And it has failed to pay any post-termination commissions, including for sales that occurred in the remaining part of May and in June and July of 2021. (ECF No. 1, PageID 5–7.)

## II.    Procedural History

SMA brings five counts against DHH. First, SMA alleges that DHH violated the Michigan Sales Representative Act ("MSRA"), MCL § 600.2961, by failing to timely pay commissions due and owing. (ECF No. 1, PageID 8–10.) Second, SMA alleges that DHH will continue to violate the MSRA as long as it refuses to pay SMA a "10% commission on all customer accounts that [SMA] procured during the Term of the parties' Agreement." (ECF No. 1, PageID 13.)

Third, SMA alleges that it is entitled to an equitable accounting, because "[t]he exact amount of sales commissions owing can only be determined by evaluating the

sales records of DHH, which are exclusively within the control of DHH," and which DHH has not disclosed to SMA to date. (ECF No. 1, PageID 13–15.)

Fourth, SMA alleges that DHH breached the parties' contract by failing to provide reasonable notice of termination and severance pay. (ECF No. 1, PageID 15–17.) SMA admits that the "Agreement lacked express terms relating to termination notice" and "severance." (ECF No. 1, PageID 15.) But it maintains that it is entitled to these benefits because "[r]easonable notice, according to industry practice, . . . usually requires between 30 to 90 days," and likewise, "[i]ndustry standard . . . makes 18–36 weeks' severance pay appropriate." (ECF No. 1, PageID 15, 17.)

Fifth and finally, SMA alleges that DHH is liable for the June and July commissions under a theory of promissory estoppel. (ECF No. 1, PageID 17–19.) "This Count is pled in the alternative to" the second. (ECF No. 1, PageID 17.)

On April 7, 2022, DHH moved to dismiss most of these claims. (ECF No. 8.) Specifically, DHH argued (in the following order) that the claims for wrongful termination, severance pay, post-termination commissions, an equitable-accounting, and promissory-estoppel relief are "not plausible." (ECF No. 8.)

SMA responded on May 19, 2022, (ECF No. 10), and DHH replied on June 2, 2022, (ECF No. 13).

### III.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).  To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The Sixth Circuit has explained that, "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely

possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to the plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6).").

## IV.   Analysis

The Court will address each of DHH's arguments in turn. At the outset, the Court notes that "[t]he cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." *McIntosh v. Groomes*, 227 Mich. 215, 218 (1924).[1]

---

[1] Both sides appear to agree that Michigan state law governs the substantive issues addressed in this Order.

**A. The Court DENIES DHH's Motion to Dismiss SMA's claim for wrongful termination (part of Count IV).**

*Arguments*

DHH states that, "'[u]nder Michigan law, contracts for an indefinite term that do not contain a provision regarding the manner in which the contract may be terminated,'" like the Agreement here, "'are terminable at will.'" (ECF No. 8, PageID 45–46) (quoting *Erickson's Flooring & Supply Co. v. Tembec, Inc.*, 212 F. App'x 558, 561 (6th Cir. 2007) and also citing *Polimeni v. Gen. Motors Corp.*, No. 274419, 2007 WL 1791894, at *3 (Mich. Ct. App. June 21, 2007)). Therefore, it argues, SMA "cannot state a plausible claim for wrongful termination" and "[t]he Court should dismiss Count IV to the extent premised on an alleged failure to provide notice before termination." (ECF No. 8, PageID 46.)

SMA responds that its Complaint "sets forth a claim for breach of a *verbal* contract" in which the parties "agreed to allow industry standards to govern the specific terms of their contractual relationship." (ECF No. 10, PageID 74) (emphasis added) (citing ECF No. 1, PageID 15). It "contends" that such standards require "30 to 90 days' notice" "for terminating a contract." (ECF No. 10, PageID 75.) And, ultimately, it argues that "'further evidence is required to determine the nature and terms of the [verbal] agreement.'" (ECF No. 10, PageID 76) (quoting *Johnson Controls, Inc. v. TRW Vehicle Safety Sys., Inc.*, 491 F. Supp. 2d 707, 721 (E.D. Mich. 2007) and also noting that in *Erickson's Flooring*, 212 F. App'x 558, the parties

7

"were allowed to introduce evidence gathered during discovery as to the contract's terms").

DHH replies that SMA "has [not cited] a single case where a court has implied a notice requirement into a contract containing none." (ECF No. 13, PageID 109.) And it reiterates its position that "the complaint does not allege that the contract contains an express term concerning . . . termination" and therefore "was terminable at will." (ECF No. 13, PageID 109) (citing *Raithel v. Cole*, No. 222499, 2001 WL 793853, at *2 (Mich. Ct. App. July 13, 2001)).

*Analysis*

The Court **DENIES** DHH's Motion to Dismiss SMA's claim for wrongful termination, which claim is part of Count IV of SMA's Complaint (ECF No. 1, PageID 15–17).

The Michigan Supreme Court has explained that:

> It is not the law that an agreement must have a definite term or duration and that therefore an agreement which does not have a definite term or duration is terminable at the will of either party. . . . The rule is rather that where the parties have not agreed upon the term, duration, or manner of termination of such agreement it is generally deemed to be terminable at the will of either party *because they have not agreed otherwise*.

*Lichnovsky v. Ziebart Intern. Corp.*, 414 Mich. 228, 240 (1982) (emphasis added).

But here, SMA alleges that the parties *have* agreed otherwise. Specifically, SMA alleges that "the parties formed the Agreement with the understanding that industry

8

standards and fair business practices would control their contractual relationship."
(ECF No. 1, PageID 15.) And it also alleges that "industry practice[] for these types
of exclusive sales representative agreements usually requires between 30 to 90 days
termination notice." (ECF No. 1, PageID 15.) Combined, these allegations amount
to a plausible claim that the parties at least implicitly *agreed* that the industry
practice requirement of 30 to 90 days termination notice would "control" their
relationship. Thus, SMA's claim that DHH breached the Agreement by terminating
their relationship "abrupt[ly] and immediate[ly]" is plausible. (ECF No. 1, PageID
15.)[2]

The cases cited by DHH do not undermine this conclusion. All of those cases
involved contracts that did not have any terms that dealt with the termination at issue;
none involved a term incorporating industry standards that included a notice
requirement. *See Erickson's Flooring & Supply Co., Inc.*, 212 F. App'x at 561 ("The
only evidence [of a termination provision] that Erickson's identifies is two letters
. . . . In neither is there any mention, or implication, of termination only for cause");
*Polimeni*, 2007 WL 1791894, at *3 ("Polimeni admitted that terms for duration or
termination of the contract were never discussed"); *Raithel*, 2001 WL 793853, at *2

---

[2] DHH states that it "gave [SMA] 28-days' notice of termination" and offers to
produce the Termination Notice for the Courts' inspection. (ECF No. 8, PageID 43.)
But even if this is true, SMA's claim would still survive, because 28 days is fewer
than the alleged industry standard minimum of 30 days.

("Where a contract shows that the parties have not agreed upon the term, duration, or manner of termination of the contract, it is generally deemed to be terminable at the will of either party.").

**B. The Court GRANTS DHH's Motion to Dismiss SMA's claim for severance (the other part of Count IV).**

*Arguments*

DHH asserts that SMA's severance claim is "untethered to any contractual term" and thus "meritless," because "[u]nder Michigan law, severance pay is a matter of express, rather than implied contract." (ECF No. 8, PageID 47) (citing *AFT Mich. v. State of Michigan*, 497 Mich. 197, 236 (2015); *Klein v. HP Pelzer Auto. Sys., Inc.*, 306 Mich. App. 67, 82–83 (2014); *Groom v. Rapak LLC*, No. 321115, 2015 WL 3766859, at *3 (Mich. Ct. App. June 16, 2015); and *Eftink v. Herman Miller, Inc.*, No. 274281, 2008 WL 4276447, at *2 (Mich. Ct. App. Sept. 16, 2008)).

SMA responds that "[s]everance pay was one of" the terms of the Agreement, given that the Agreement encompassed "terms similar to those employed by industry standards." (ECF No. 1, PageID 76.) And it emphasizes that "severance pay can be a contract term arising from *verbal* representations." (ECF No. 10, PageID 77) (emphasis added) (citing *Klein*, 306 Mich. App. 67 and *Heib v. Hooberry & Assocs., Inc.*, No. 17-cv-360, 2019 WL 1980442, at *3–4 (N.D. Ohio May 3, 2019)).

DHH replies that SMA "has not cited any case where a court has implied a severance requirement into a contract containing none" nor "any authority

suggesting that a term containing severance is an omitted term typically supplied by the courts." (ECF No. 13, PageID 109.) "Nor," it continues, "has [SMA] suggested that severance pay is even an ordinary matter of express agreement for an independent contractor." (ECF No. 13, PageID 109–10) (citing *Rolando v. Babcock & Wilcox Co.*, No. 84-cv-5009, 1986 WL 8875, at *2 (E.D. Mich. Feb. 20, 1986)).

*Analysis*

The Court **GRANTS** DHH's Motion to Dismiss SMA's claim for severance, which claim is the other part of Count IV of SMA's Complaint (ECF No. 1, PageID 15–17).

SMA's Complaint concedes that "the parties' Agreement lacked express terms relating to severance." (ECF No. 1, PageID 16.) And the Michigan Supreme Court has held that "[t]he terms of an employment contract *regarding compensation* must be *express* promises, either oral or written." *AFT Mich.*, 497 Mich. at 236 (emphasis added) (internal citation, quotation marks, and alterations omitted); *see also Frick v. Hurley Med. Ctr.*, No. 346747, 2020 WL 4723275, at *7 (Mich. Ct. App. Aug. 13, 2020) (applying *AFT*'s holding in a case about a "severance package"); *In re Cherry Growers, Inc.*, 595 B.R. 882, 887–88 (Bankr. W.D. Mich. 2018) ("The Debtor's case-by-case approach to severance is consistent with Michigan law, which treats compensation-related terms of employment agreements generally as a matter of

11

express, rather than implied, contract."). Therefore, SMA's claim for severance pay is not plausible.

Neither *Heib* nor *Klein* helps SMA's case, because the agreements at issue in those cases involved *express* severance terms. *See Heib*, 2019 WL 1980442, at *3; *Klein*, 306 Mich. App. at 77–78.

## C. The Court DENIES DHH's Motion to Dismiss SMA's claim for post-termination commissions (Count II).

*Arguments*

DHH argues that SMA "admits that the contract says nothing about termination, much less post-termination commissions," and "makes no allegation that it negotiated sales, much less post-termination sales," but rather only alleges that it "procured dealers for Holz Haus." (ECF No. 8, PageID 49–50) (comparing the Agreement here to that in *Bagnasco v. Diversified Plastics, Inc.*, No. 19-13546, 2021 WL 2311945, at *3 (E.D. Mich. June 7, 2021)). And "because [SMA] does not allege that its efforts were the procuring cause of any specific sale or purchase order completed after its termination," DHH reasons, SMA "cannot state a plausible breach-of-contract claim for post termination commissions." (ECF No. 8, PageID 50.) DHH adds that SMA cannot state "a claim under MSR[]A [either] because any [such] claim . . . is a derivative of a breach-of-contract claim." (ECF No. 8, PageID 50) (citing *Hardy v. Reynolds & Reynolds Co.*, 311 F. App'x 759, 766 (6th Cir. 2009)).

12

SMA responds that "the parties' agreement contemplated a 'customer procurement' commission basis, which means DHH agreed to pay SMA a 10% commission on all DHH products ordered in SMA's Territory for which SMA was the procuring cause." (ECF No. 10, PageID 70.) It further argues that "S[M]A continues to be the procuring cause on re-orders to the customer base it established in the relevant sales territory." (ECF No. 10, PageID 70.) It emphasizes that it "does not need to show that it 'negotiated . . . post-termination sales,' which does not even make[] sense—as a sales representative would never be involved in a post-termination negotiation." (ECF No. 10, PageID 71.) And it insists that "[d]iscovery will show that a customer-based sales commission agreement was struck between these parties, and that SMA is entitled to post-termination sales commissions because it was the procuring cause of many sales made to the customer base it established across eleven states." (ECF No. 10, PageID 71–72.)

DHH replies that "it is the acquisition of orders, not the acquisition of the customer that is protected by the 'procuring cause' doctrine." (ECF No. 13, PageID 111) (quoting *William Kehoe Assocs. v. Ind. Tube Corp.*, 891 F.2d 293 (6th Cir. 1989) and citing *Dikker v. 5-Star Team Leasing, LLC*, 243 F. Supp. 3d 844, 857 (W.D. Mich. 2017)). Therefore, it asserts, "[b]ecause [SMA] did not allege that its efforts were the procuring cause of any specific sale or purchase order completed after its termination, it cannot state a plausible breach-of-contract or MSR[]A claim

13

for post-termination commissions." (ECF No. 13, PageID 112) (distinguishing *Militzer v. Kal-Die Casting Corp.*, 41 Mich. App. 492, 494–95 (1972) and re-citing *Bagnasco*, 2021 WL 2311945).

*Analysis*

The Court **DENIES** DHH's Motion to Dismiss SMA's claim for post-termination commissions, which claim is Count II of SMA's Complaint (ECF No. 1, PageID 11–13).

First and foremost, "whether an agent or broker . . . is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment." *Reed v. Kurdziel*, 352 Mich. 287, 294 (1958). But if "the contract is silent" on the issue, *then* "the agent is entitled to recover a commission on a sale, whether or not he personally concluded it, only where it can be shown that his efforts were the 'procuring cause.'" *Roberts Assocs., Inc. v. Blazer Intern. Corp.*, 741 F. Supp. 650, 652 (E.D. Mich. 1990) (quoting *Reed*, 352 Mich. at 295).

DHH's argument fails at the first step, because, despite DHH's assertion to the contrary, SMA has alleged that "[t]he parties['] Agreement contemplated a 'customer procurement' commission basis" that "allows a sales representative to recover a commission for all sales to a customer that the agent procured—regardless of whether the agent was involved in a particular sale." (ECF No. 1, PageID 11); *see*

14

*also* (ECF No. 1, PageID 2) ("DHH agreed to pay SMA a 10% commission on *all customer accounts* . . . procured by SMA in the specified territory." (emphasis added)). If SMA proves this plausible allegation to be true, then it will be entitled to the post-termination commissions that it seeks. *Cf. Lilley v. BTM Corp.*, 958 F.2d 746, 751 (6th Cir. 1992) ("Whether an agent is entitled to commissions on a customer procurement or sales procurement basis is determined by contract between the agent and the principal."). So SMA has stated a plausible claim here.

## D. The Court GRANTS DHH's Motion to Dismiss SMA's equitable-accounting claim (Count III).

*Arguments*

DHH argues that SMA's Complaint "suggests no reason why discovery would be insufficient to determine the amount due under the contract" and therefore "fails to state a plausible claim for an equitable accounting." (ECF No. 8, PageID 51) (citing *Boyd v. Nelson Credit Ctrs., Inc.*, 132 Mich. App. 774 (1984); *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972); *Alshaibani v. Litton Loan Servicing, L.P.*, No. 12-cv-063, 2012 WL 3239088, at *4 (S.D. Ohio Aug. 7, 2012); *Barkho v. Homecomings Fin., LLC*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009); and *Univ. Pediatricians v. Wilson*, No. 353462, 2021 WL 4228193, at *15 (Mich. Ct. App. Sept. 16, 2021)).

SMA responds that "an equitable accounting is required here because the amount of sales commissions owed can only be ascertained by a comprehensive examination

15

of the sales records held exclusively by DHH—a cumbersome task that should not be put to a jury." (ECF No. 10, PageID 73) (citing *Basinger v. Provident Life & Accident Ins. Co.*, 67 Mich. App. 1, 9 (1976) and *Macey v. Archdiocese of Detroit Priests' Pension Plan, Inc.*, No. 318617, 2015 WL 1214589, at *2 (Mich. Ct. App. Mar. 17, 2015)). However, it adds that, "[i]f DHH provides the requested records during discovery, and the evidence is straight-forward, S[M]A will voluntarily dismiss this claim and allow the damages claim to go to the jury." (ECF No. 10, PageID 73.)

DHH replies that "discovery under the Federal Rules of Civil Procedure is sufficient to determine any amounts due to [SMA], and [SMA] does not suggest otherwise," and therefore "the Court should dismiss" this claim. (ECF No. 13, PageID 112) (citing *Salita Promotions Corp. v. Ergashev*, No. 20-12547, 2021 WL 3510967, at *9 (E.D. Mich. Aug. 10, 2021) and *Boland v. First Winthrop Corp.*, 09-cv-218, 2010 WL 3037076, at *3 (S.D. Ohio Aug. 2, 2010)).

*Analysis*

The Court **GRANTS** DHH's Motion to Dismiss SMA's equitable accounting claim, which claim is Count III of SMA's Complaint (ECF No. 1, PageID 13–15).

Equitable accounting "is an extraordinary remedy." *Bradshaw*, 454 F.2d at 79. Under Michigan law, a party may pursue an action for this remedy "where he [is] unsure of the amounts at stake and where the accounts at issue [are] 'greatly

16

complicated.'" *Digital 2000, Inc. v. Bear Commc'ns, Inc.*, 130 F. App'x 12, 22–23 (6th Cir. 2005) (quoting *Basinger*, 67 Mich. App. at 7). But such an action "is available only when legal remedies are inadequate" and is "unnecessary where discovery is sufficient to determine the amounts at issue." *Bradshaw*, 454 F.2d at 79; *Boyd*, 132 Mich. App. at 779.

"[W]hether a plaintiff has stated a cause of action for an [equitable] accounting must be determined from the facts pled in the plaintiff's complaint rather than from the prayer for relief." *Boyd*, 132 Mich. App. at 779. And "[t]he burden of proof is on [the] plaintiff to show the inadequacy of [a] legal remedy." *Wilson v. Cont'l Dev. Co.*, 112 F. Supp. 2d 648, 663 (W.D. Mich. 1999).

SMA has not met that burden here. SMA's Complaint alleges that "DHH's financial records are exclusively within [DHH's] control," but it does not allege that SMA cannot acquire these records through discovery, nor that the records are so complex that a jury could not understand them. (ECF No. 1, PageID 13–15.) To the contrary, "a jury [is] able to do arithmetic as well as a judge could, [] the transactions [here] d[o] not appear . . . to be particularly complex, and it [] seem[s] that the alleged difficulties in tracing and isolating the [commissions allegedly due] will vanish after a discovery is had." *Austin v. Socony Vacuum Oil Co.*, 291 Mich. 513, 520–21 (1939). Therefore, SMA has failed to state a plausible claim for an equitable accounting. *Cf. Cyril J. Burke, Inc. v. Eddy & Co.*, 332 Mich. 300, 303 (1952) ("The

17

suit is to recover a claimed debt arising out of a contract. If plaintiffs needed any discovery of the amount of profits received by defendant, they could have s[u]bpoenaed witnesses or availed themselves of the discovery rule. Plaintiffs rights can be adequately determined in a court of law." ); *Salita Promotions Corp.*, 2021 WL 3510967, at *9 ("[J]ust because Salita Promotions does not currently have the information necessary to calculate its damages does not entitle it to an accounting claim. . . . The Court will permit Salita Promotions to obtain th[e] relevant and proportional information through traditional discovery.").

**E. The Court GRANTS DHH's Motion to Dismiss SMA's promissory estoppel claim (Count V).**

*Arguments*

DHH first argues that SMA's "claim for promissory estoppel is legally untenable" because "there is an express contract" and "the offer of compromise" on which the claim relies "is inadmissible under Federal Rule of Evidence 408." (ECF No. 8, PageID 52) (citing *Groeb Farms, Inc. v. Alfred L. Wolff, Inc.*, No. 08-cv-14624, 2009 WL 500816, at *7 (E.D. Mich. Feb. 27, 2009) and *Gjokaj v. United States Steel Corp.*, 700 F. App'x 494, 501 (6th Cir. 2017)). It then argues that SMA "cannot establish reasonable reliance on an unaccepted offer of compromise" because SMA "refers to the 'promise' as a mere 'proposal[,]' . . . admits that it refused the proposal, . . . [and] 'did not fulfill all of the prerequisites upon which [the] promise . . . depended.'" (ECF No. 8, PageID 52–53) (citing ECF No. 1; *State*

18

*Bank of Standish v. Curry*, 442 Mich. 76, 85 (1993); *Olson v. Merrill Lynch Credit Corp.*, 576 F. App'x 506, 511 (6th Cir. 2014); and *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 430–31 (6th Cir. 2013)).

SMA responds that "a full reading of the Complaint . . . and the May letters . . . shows an unequivocal promise was made and S[M]A reasonably relied on this promise when it refrained from competing with DHH in its territory." (ECF No. 10, PageID 78) (citing *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 13 (2006) for the promissory estoppel standard and ECF No. 10-1 for the letter). It also asserts that it "did not 'reject' the offer of post-termination commissions—it simply contends that these sales commissions were already owed," and "[n]onetheless, in reasonabl[e] reliance on DHH's promise, it refrained from offering a competing product within the sales territory." (ECF No. 10, PageID 78.) Lastly, SMA states that it did not "allege that its promissory estoppel claim is based on the same express contract underlying the parties' ten-year sales commission agreement," but rather "takes aim at the promises that were made to S[M]A in the May letters" and "is pled in the alternative to S[M]A's post-termination sales commission claim." (ECF No. 10, PageID 78–79) (citing *Groeb Farms*, 2009 WL 500816, at *7 as "recognizing a part[y's] right to plead claims 'in the alternative'").

DHH replies that "[t]he letters plainly constitute a proposal" without a "'clear and definite' promise" and SMA "admits that it did not accept the proposal." (ECF

No. 13, PageID 113) (citing ECF No. 10-1, PageID 83–84 and *State Bank of Standish*, 442 Mich. at 85). Further, DHH argues that SMA "cannot establish that it reasonably relied on any alleged promises contained in the letters, which contain conditions that [SMA] did not, and cannot, allege to have fulfilled." (ECF No. 13, PageID 113) (citing *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 687 (1999)).

*Analysis*

The Court **GRANTS** DHH's Motion to Dismiss SMA's promissory estoppel claim, which claim is Count V of SMA's Complaint (ECF No. 1, PageID 17–19).

Under Michigan law, a promissory estoppel claims requires "'(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided.'" *El-Seblani*, 510 F. App'x at 430 (quoting *McMath v. Ford Motor Co.*, 77 Mich. App. 721 (1977)). And "the sine qua non of . . . promissory estoppel is that the promise be clear and definite." *State Bank of Standish*, 442 Mich. at 85.

SMA's promissory estoppel claim is based on letters[3] in which DHH states that it would pay SMA commissions (at reduced rates) for "Complete Orders" received from June 1 through July 31, 2021 "*contingent on* SMA *agreeing* to not offer a competing line of cabinetry to Dealers currently associated with SMA and DHH until after July 31st" and on SMA "return[ing] DHH products."[4] (ECF No. 10-1, PageID 84) (emphasis added). The claim is not plausible because it is based on a promise that was conditional and thus not sufficiently definite. *See El-Seblani*, 510 F. App'x at 430 ("[O]ne 'cannot construct a detrimental reliance or estoppel theory on a conditional promise, especially when the condition did not take place.'" (quoting *Bivans Corp. v. Comm. Nat'l Bank of Pontiac*, 15 Mich. App. 178 (1968))); *Mich. Alt. Hous. v. Delta Com. Props.*, No. 197186, 1998 WL 1992821, at *6 (Ct. App. Mich. May 5, 1998) ("The doctrine of promissory estoppel is applied in cases where there is a promise 'gratuitous at least in the sense that there is no consideration

---

[3] SMA attached the letters to its Response to DHH's Motion to Dismiss. *See* ECF No. 10-1. The Court may consider the letters now because they are central to this claim, SMA mentions them in its Complaint, and neither party disputes their veracity. *Armengau*, 7 F. App'x at 344 ("If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings."); ECF No. 1, PageID 18 (mentioning the letters in the Complaint); ECF No. 10-1 (attaching the letters to SMA's Response); ECF No. 13, PageID 113 (addressing the letters on behalf of DHH without disputing their veracity).

[4] The Court quotes only the May 17 letter here because that letter is the more recent one and is the one that sets out the 75% and 50% commission rates to which SMA alleges it is entitled.

21

to make it binding.'" (quoting Williston on Contracts (4th ed 1992), § 8:5, pp. 85–89)).

Further, even if DHH's letters did express a clear and definite promise, it would not have been reasonable for SMA to rely on that promise by refraining from selling its cabinetry before first *agreeing* to do so, as the letters required. *Cf. Cincinnati Fluid Power, Inc. v. Rexnord*, 797 F.2d 1386, 1392–93 (6th Cir. 1986) (collecting cases holding that under different state laws promissory estoppel claims fail when based on conditional promises whose conditions are not met *before* the detrimental reliance). Yet SMA's Complaint does not allege that SMA ever affirmatively agreed to DHH's conditions. In fact, it suggests the opposite by stating that "SMA did not agree that this proposal from DHH was adequate." (ECF No. 1, PageID 18.) This is another reason that SMA's promissory estoppel claim is not plausible.

## Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** DHH's Motion to Dismiss (ECF No. 8). Specifically, the Court **GRANTS** DHH's Motion to Dismiss SMA's claims for severance pay, an equitable accounting, and promissory estoppel relief, and the Court **DENIES** DHH's Motion to Dismiss SMA's claims for wrongful termination and post-termination commissions.

22

That means that Counts III and V of the Complaint are dismissed, and the part of Count IV that deals with severance pay is also dismissed. Counts I and II remain, as does the part of Count IV that deals with wrongful termination due to inadequate notice.

**IT IS SO ORDERED.**

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: March 15, 2023